Our next case for argument this morning is United States v. Joshua DuPage. Ms. Eisenman, good morning. May it please the court, Vanessa Eisenman on behalf of Joshua DuPage. With the limited time, I'd like to jump right into the related issues of waiver and remedy, which seem to be the government's primary opposition to this appeal rather than the merits. If this court agrees that the 851 predicate is invalid, then Mr. DuPage's guilty plea should be vacated. Again, we concede that this is under plain error review, just like in this court's decision in Delatorre. This is something that everybody missed down below regarding the mandatory minimum, but there's a clear error regarding the overbreath of the predicate, and that error affected Mr. DuPage's substantial rights, just like in Delatorre, in that there is more than a reasonable probability that he likely would have proceeded differently had he known that the true mandatory minimum was only five years instead of ten. Again, he agreed to a binding eight-year sentence on count one, which in all probability he never would have done had he known that he was only facing a mandatory minimum of five years. This is all over the record. Everybody recognized at the change of plea hearing, at sentencing, that the 851 was the reason that he agreed to this C1C plea agreement. So without that, he in all likelihood would have entered an open plea or gone to trial, and he could have argued for a sentence as low as five years and still had very low probability that he would have gotten more than the eight years, which was within what the government thinks would be the guideline range. Well, the 851 enhancement was not the only subject of the plea agreement. That's correct. There was more consideration than that. The government agreed to drop the 851 enhancement, which was being contested, and there was some uncertainty about whether the meth manufacturing conviction would count. And in addition, agreed to drop the felon in possession charge? Yes. And agreed to a lock-in of 13 years. Yes. Which is pretty good consideration under these circumstances, and your client acknowledged in the change of plea hearing and then later when he sought to withdraw his plea on other grounds and the case went forward that he understood the bargain, essentially. No, I disagree on that. First of all, the 851 was the primary consideration. The dropping of the count to all that did was lower his guideline range, which was irrelevant because he agreed to a binding sentence. The concurrent sentences, everybody thought that that would net him a couple months at most. So the 851 was why he agreed to it. So this was only a good bargain if the 851 was valid. And in terms of what you just mentioned and things in the record, I went through these in the reply brief, and it's not as clear as what the government says. And I think the Crockett decision is actually a really nice distinction to show what this case is not. And this was not a bargain where everybody knew that there was this potential issue with the 851 being overbroad, and that was bargained for. That happened in Crockett. In Crockett, everybody knew that the occasions clause, there was a circuit split on that issue, this was going to go up to the Supreme Court. This is all over the plea agreement. The defendant stipulated that he committed the predicates on three different occasions. It mentions the ACCA in that plea agreement. They talk about it in the plea colloquy. So this is all over the record that everybody knows that there's this potential issue that may change things, and that's why they did this bargain. That is not at all what happened here. The government points out a couple of things in the record that they say shows that this was waiver. And, again, waiver, intentional relinquishment of a known right for strategic reasons. That's not this. He writes a pro se letter three years before his guilty plea. Mr. DuPage is a letter writer. He writes the court, he writes his attorneys, and he's kind of a laundry list letter writer. So this is one of his letters that he says, again, three years before his guilty plea. And he just kind of puts this laundry list of stuff in there about why the 851 may be invalid. But if you look at it, his primary contentions are factual. I was wrongfully prosecuted. I had bad representation down below. I wasn't actually producing that. He's kind of throwing that out there. This is never adjudicated because he has counsel, so the court is ignoring this. The second thing the government talks about is in, I believe, chronologically, he said he had this attorney, Peter Lynch, before his guilty plea, and Peter Lynch had to submit a letter to the court about his CJA voucher being over the cap. And in that letter, he says, it's a sealed letter, he says, Mr. DuPage provided me with some case law about the 851. That's it. No context of when, no context of what. Again, this could have been his laundry list that he provided him. We don't know what these cases could be. And then the biggest thing that I think you can tell why this was never really contemplated by any of the parties is in that hearing on Attorney Daniel's motion to withdraw his counsel. This is after the guilty plea. This is Record 85, the transcript. The whole thing is about purity. They're talking about this purity issue. So what happened was Mr. DuPage didn't get all of his discovery before the guilty plea, but he knew that, and they went over that at the plea hearing, and he says, yeah, I'm fine. After the plea hearing, he gets more discovery. He finds something in that discovery that makes him think that the government can only charge him with meth mixture instead of actual meth. And he says that if the government can only charge him with a mixture, can only prove that he had a mixture of methamphetamine, then he's not under any mandatory minimum whatsoever, and therefore the 851 is invalid. So if you read that transcript, that's what they're talking about. So when Attorney Daniel says there is a potential defense to the 851, he says at trial, and it's all in this context of the purity. So the thought was if he went to trial, he could try to prove that he only had a meth mixture instead of actual meth. And that way, if he did prove that to the jury, then he wouldn't have been subject to any mandatory minimum, including the 851. So again, Crockett, I really actually like that case. The more I read it, the more I like it, because two big things that were present there that are not present here is, first of all, there was a change in the law. Wooden came out after the guilty plea. Everybody knew that that was a possibility, and there was this change in the law. And this court's case law has been clear that if you bargain, you know, knowing that there could be this future change in the law, then the appeal waiver holds. That is not what happened here. This court has no precedent regarding this predicate at the time or now. Nothing changed. We're looking at these plain statutes just in dilator. Same thing as in dilator, on the face of these statutes as they existed at the time of the plea agreement and as they exist now, there is this facial overbreath that's really, really broad. But if it's a novel question, it suggests to me that it cannot be plain error. And practically none of these questions about the approach, the categorical approach, are clear and obvious. Oh, I disagree. Such that the trial court can be charged with the responsibility of sua sponte, noticing an error, and correcting it before proceeding. I disagree because this is exactly what happened in dilator. This is the exact type of thing. And this court said in dilator, it's plain error, but when we look at the state statute and look at the federal statute, it is really clear that one does not necessarily entail the other. Again, we're under Shuler, so there's got to be a close connection, right? And if this court were to disagree with that, it would be creating a circuit split. Well, was there an appeal waiver in that case? In which case? In dilator? Yes. Yes. There definitely was. And it's very similar to Defendant Rush's position in that case. There were some concessions regarding Chapman, but Rush was really, really similar. And did the dilator opinion address the Worthen line of cases? Not to my knowledge. The circularity of backdooring merits arguments. That's not about the validity of a guilty plea. Worthen is not about the validity of a guilty plea. That's what this court said in Nulth, and it distinguished it there. That was about the validity of a conviction. And if you're not challenging the validity of the guilty plea, then the appeal waiver holds. But this court has tons of case law, and it's cited in our opening brief, pages 15 through 18, saying that if you're challenging the validity of the guilty plea as being unknowing or the product of a mutual mistake regarding a big deal like the mandatory minimum, then if you find that error, then the whole plea goes out the window, including the appeal waiver. I'll save my 18 seconds for rebuttal. Thank you. Thank you. Ms. Boyle. Good morning, Your Honors. May it please the court, counsel, my name is Catherine Boyle on behalf of the United States. This is a case that should be resolved on waiver. Mr. DuPage waived his challenge to his conviction and sentence by knowingly and voluntarily entering into a plea agreement with a clear appeal waiver. That express and unambiguous waiver remains in effect and should be enforced. As we've stated, citing Worthen and Carson and Crockett and other cases, Mr. DuPage here is necessarily asking this court to engage in a circular exercise, first, to ignore his appellate waiver, second, to reach the merits of the 851 issue, third, to determine that the predicate is invalid, and fourth, to hold that the appellate waiver is void. The court should decline to do that. It can't be the law that an appeal waiver is enforceable unless the appellant would succeed on the merits of his appeal. That's why this court has only declined to enforce an otherwise valid appeal waiver in a few limited circumstances, such as where the sentence plainly exceeds the statutory maximum or there's been reliance on a constitutionally impermissible factor like race or when counsel is ineffective in negotiation of the plea agreement. None of those circumstances exist here, and in light of that, Mr. DuPage argues that his plea agreement was not knowing and voluntary. But that is rebutted by the record evidence in this case, which shows that Mr. DuPage believed the validity of the 851 predicate was an open question and chose to plead guilty anyways in exchange for significant benefits that were conferred. These benefits were substantial. They included, of course, the dismissal, the government's withdrawal of the 851 notice, which permitted Mr. DuPage to manage his risk that the predicate might be valid. The government also agreed to move to dismiss the felon in possession account, which is something that is not addressed in great detail in the defendant's opening or reply brief. There was a large benefit to this. One of Mr. DuPage's main points in his opening brief was that he would only have agreed to the above guideline sentence of 96 months because his range was 70 to 87 with the dismissal of the count and the withdrawal of the 851 notice to get rid of the 851 predicate. But without the dismissal of the felon in possession count, Mr. DuPage would have faced an advisory guideline range of 84 to 105 months under an open plea to all three counts. The 96-month sentence that he actually received falls right around the middle of that range. Had Mr. DuPage proceeded to trial and not received acceptance of responsibility, he would have faced an advisory guideline range of 110 to 137 months imprisonment or 120 to 137 with a valid 851 predicate. And he also has an added benefit if he avoids having an additional count of conviction on his record, which this court has said is a benefit for plea agreements. The government also included an agreement to recommend that the undischarged state sentences should run concurrently with the federal sentence. And Mr. DuPage avoided further risks that we haven't addressed yet here today. He avoids the possibility of an upward variance at the district court's discretion, and that's a real possibility. Mr. DuPage would have been a prime candidate for a high-end guideline sentence or even an upward variance in light of his offense conduct, which involves walking the streets of Pekin, Illinois, with a pharmacy of drugs and a firearm with a bullet in the chamber. And he also reaches for his pocket, his jacket pocket, which the record is not clear as to whether the firearm was in the pocket or elsewhere in the jacket, but he's reaching for his pocket when the officer is trying to detain him. So the offense conduct is quite aggravated here, which could be the subject of an upward variance. He also could be the subject of such a variance based on his extensive criminal history and record of failing to comply with conditions of supervised release and confinement. So Mr. DuPage is locked in this 96-month sentence in the middle of the guideline range that would apply under an open plea and avoids an upward variance that could quite possibly have occurred. He also avoids the possibility raised by his attorney that certain relevant conduct were considered because Mr. DuPage had noted that he received, I think, about two ounces of methamphetamine at a time from his dealer and sold about a quarter of an ounce a day, that he could have had a higher base offense level on his possession with intent to distribute methamphetamine count once that relevant conduct was taken into consideration. So this is really a plea agreement that has just a broad scope. He achieved all these benefits for cloudiness enough, but choosing to forego the potential 851 challenge. He raised questions about the validity of the predicate prior to pleading guilty, both via the pre-plea pro se 851 challenge and in consultation with his attorney. He had a whole succession of attorneys. He did. He started out with the FPD, but they had a conflict. Then he had Mr. Daniels, and he had Mr. Lynch, and then he had Mr. Daniels again, and then he had Mr. Rentesi for sentencing. And lots of pro se communications with the court. Many pro se communications with the court over the course of that. And he was a very strong advocate for himself in raising every claim that he potentially saw. He wore everybody down and got a good deal. Yes. Basically. I think that's a valid interpretation. He was a good advocate for himself. I think that's a valid interpretation of what happened here, Your Honor. It seems that he advocated for himself very wisely. I think when you read Mr. Lynch, his attorney's letter in context, speaking about 851 objections and the large number of phone calls and visits he had with Mr. DuPage, you can tell that he discussed these issues at length. He didn't just read Mr. DuPage's objections and never respond to him. How do you respond to counsel's argument that when Mr. Daniels was raising the doubts or the potential viability of a defense against the 851 notice, that they were talking about purity versus the categorical approach? Yes, Your Honor. Well, first of all, here where Mr. DuPage did not try to withdraw his guilty plea on this basis below, the court is reviewing for plain error. And it is Mr. DuPage's burden to show that. I don't think on this record that he has. First, when you look back sort of to the pro se challenge to the 851 notice, which shows what he was initially thinking about all these things, he points out there's no methamphetamine being produced. The state statute is very broad and encompasses a wide variety of actions because of the word participation. His objections go exactly to the objections he's bringing up in this appeal. And I think that should inform our interpretation of what Mr. Daniels is saying at the later status hearing when he discusses the issues that he had considered with the 851, with the potential 851 objection, which makes sense here because we know, based on the record, that Mr. DuPage discussed it with him. Mr. DuPage brought every complaint he had up about his case at every opportunity, and it appears to have been extensively litigated. I just want to briefly address de la Torre. De la Torre is a different circumstance. First, as to Mr. Chapman, the defense admits in its reply brief that the government conceded there that the plea would not be knowing and voluntary if the court accepted the concession, that the plea would not have been knowing and voluntary if the predicates were invalid. And that wasn't the only consideration. Both for Mr. Rush and Mr. de la Torre, one of the primary reasons this court found that the pleas were knowing and voluntary is because they didn't think there was any strong possibility in that circumstance that the defendants would have pled guilty without believing that these 851 predicates applied. That's just not the case here. We have every indication from the record that Mr. DuPage was planning to plead guilty in this case and that he knew that the 851 predicate was an issue. He just got a good enough deal to make it worth it regardless of whether the 851 predicate was valid in this case. He wouldn't have really gained that much more or anything more, in my opinion, by challenging it. And then, additionally, both the judges at Mr. Chapman and Mr. Rush's sentencing in de la Torre indicated that they were a little bit troubled by the amount of time the defendants got under these plea agreements, which suggested they might have given them a lower sentence. There was no indication from the judge on the record here saying anything of that sort. The judge essentially indicated that he thought this was a pretty good deal for Mr. DuPage and that it was a reasonable way to handle the entire issue. Your Honor, if there are no further questions, we'll pass on the arguments in our brief and request that the court affirm. Thank you. Ms. Eisenman, we can add some time to her clock. I'll still try to be quick. I know we're all hungry. Thank you. Just real quick, again, I think what we get a little tied down in the weeds, a bigger question, why wouldn't he have litigated this if he knew about this issue? Why wouldn't he have brought this up? Why wouldn't he have challenged the 851 before the guilty plea? Why wouldn't he have moved to withdraw on these grounds in the district court if he knew about this? He would have. There would have been no downside to it. Either he wins, in which case he doesn't have this mandatory, he only has a five-year mandatory minimum, or he loses and presumably the government would still give him the same deal. Otherwise, I think that would be a pretty big ethical problem. So why wouldn't he have done that? Again, this is why you know that Attorney Daniels was not talking about this type of issue. He wasn't talking about manufacturing. He wasn't talking about analog because he didn't. As soon as Attorney Daniels withdraws, you get a new attorney. What does he move to withdraw his guilty plea on? Grounds that are not at all an issue in this appeal. He's talking about discovery. He's talking about the purity issue. He's not talking about this 851. Again, why wouldn't he have done that? There's no strategic reason for him to do that. Waivers should be very narrowly construed against a defendant. This case is like De La Torre. He would have gotten a much better deal had he had challenged that 851. It gets wiped out. He's got a five-year mandatory minimum, and he's got his appeals back. He could have argued for a lower sentence, and if the judge decides to give him a higher sentence, well then he still has his appeal. So it is not the case at all that he got a good deal with this. Thank you for your time. Thank you. Thank you very much. Our thanks to both counsel. The case is taken under advisement.